[No. 21987. Department One. January 28, 1930.]

R. E. ANDERSON & COMPANY, *Respondent,* v. MONT-BORNE LUMBER COMPANY, *Appellant.*[1]

*Thomas Smith, James G. Smith,* and *R. V. Welts,* for appellant.

*C. J. Henderson* and *Alfred McBee,* for respondent.

PARKER, J.—The plaintiff Anderson & Company, agent of several board fire insurance companies and engaged in the brokerage fire insurance business, commenced this action in the superior court for Skagit county seeking recovery of the sum of $1,130.67, with interest, as a balance of fire insurance premiums owing to it by the defendant, Montborne Lumber Company. A trial in that court, sitting with a jury, resulted in verdict and judgment awarding to the plaintiff recovery in the sum of $1,150, from which the lumber company has appealed to this court.

In May, 1926, negotiations were pending between appellant lumber company and the owners of the mill plant here in question looking to a purchase of the

[1]Reported in 284 Pac. 100.

plant by the lumber company. The plant had not been in operation for some two or three years. The lumber company was contemplating purchasing the plant with the view of putting it into operation about September, 1926. Before consummation of the purchase, the lumber company commenced negotiations with Anderson & Company looking to the procuring of fire insurance upon the plant. The then established normal premium insurance rate upon the plant was $8.65 per hundred, according to a survey of the plant made by the Washington survey and rating bureau; that is, that was the established rate of fire insurance upon the plant in its then condition properly chargeable by all board insurance companies.

These insurance negotiations were all conducted by Simpson, agent for Anderson & Company, and Day, agent for the lumber company. Simpson then informed Day that this established rate would be the measure of the cost of the insurance unless certain special fire hazards existing in and near the plant were removed, suggesting a number of changes and betterments which the lumber company could make if it desired to go to the expense of making them, and thus procure the insurance at a lower rate.

The evidence is in conflict as to the possible reduced rate that Simpson assured Day might be so obtained. Simpson claims that he did not assure Day that the rate could be so reduced to less than about $4.50 per hundred. Day claims that Simpson assured him that the rate could be so reduced to about $4 per hundred. The established rate was made up of a specified basis rate for the sawmill and a specified basis rate for the shingle mill and a number of additional items of special hazards as the plant then existed. It was the removal of a number of these special hazards, for each of which there was added a specified amount to the basis rates,

that rendered it possible to materially reduce the established rate of $8.65 per hundred.

Thus there was made a tentative agreement between Simpson and Day, for their respective companies, that, upon the completion of the purchase of the plant by the lumber company, Anderson & Company would furnish insurance upon the plant on this basis of measuring the premium rate thereon; it being further understood that, until the plant was put in operation, Anderson & Company would issue, when requested by the lumber company, a temporary "covering note," sometimes called "a binder," making the insurance effective pending the issuance of formal policies of a number of the board companies for which Anderson & Company was agent, the premium rate to be later determined in accordance with the extent to which the lumber company would remove some or all of the specified special hazards.

On June 1, 1926, the lumber company, having completed the purchase of the plant, requested Anderson & Company to effect insurance on the plant to the extent of $60,000. This was accordingly done by Anderson & Company by issuing to the lumber company a covering note specifying therein the several companies so insuring the plant, effective for a period of ninety days. This covering note was replaced by others in succession, ultimately increasing the insurance to $116,000, effective up to October 1, 1926.

In the meantime, the lumber company had by certain improvements and betterments removed some of the special hazards which entitled it to the insurance at a rate less than the established premium rate of $8.65 per hundred. Up to this time, the premium rate had not been determined, though the lumber company had on August 29 paid to Anderson & Company, on account of the insurance, $750. Anderson & Company,

then deeming itself sufficiently advised as to what the lumber company had done in the way of removing special hazards, concluded that the lumber company had removed those hazards only to the extent of entitling it to the insurance at a premium rate of $6.04 per hundred.

Anderson & Company thereupon, on October 1, 1926, the date of the expiration of the insurance evidenced by the last issued covering note, prepared, signed and sent to the lumber company formal policies of insurance of a number of the companies for which it was agent, making effective, and commencing on that date, $116,000 of insurance upon the plant, and charging premium therefor at the rate of $6.04 per hundred. The lumber company expressed decided dissatisfaction at the rate and refused to pay for the policies, and also refused to pay any balance due for the insurance which was evidenced by the covering notes for the period from June 1 to October 1, 1926. Following some further controversy between the parties, the policies were returned to Anderson & Company and canceled. Thereafter the lumber company purchased insurance elsewhere, for which it was required to pay a premium at the rate of $8.58 per hundred.

Anderson & Company, by this action, seek recovery from the lumber company of premiums earned for the insurance evidenced by the covering notes for the period from June 1 to October 1, 1926, at the rate of $6.04 per hundred, amounting to $1,880.67, less the $750 paid to it by the lumber company on account. No question is here made but that, if Anderson & Company is entitled to recover on the basis of the rate of $6.04 per hundred, it is entitled to recover a balance of $1,150 as awarded to it by the judgment.

The theory of the lumber company's defense is, in substance, that Anderson & Company is not entitled

to any recovery because of its breach of its contract to furnish the insurance at a premium rate of approximately $4 per hundred; contending that all of the special hazards were removed so as to entitle it to the insurance at that rate. The lumber company also, by cross-complaint, claims damages in the sum of $2,500, upon the theory that it expended more than that sum in removing the special hazards with a view of procuring the insurance at a rate of approximately $4 per hundred, and that it was induced to do so by the representations and promises of Simpson made in behalf of Anderson & Company, which expenditure proved of no value to the lumber company. The trial court withdrew this cross-complaint from the consideration of the jury, submitting to the jury the question of the right of Anderson & Company to recover premiums for the insurance evidenced by the covering notes for the period from June 1 to October 1, 1926, to be measured by proper premium rate, depending upon the extent of the removal by the lumber company of the special hazards, which would entitle it to a reduction in the established $8.65 rate.

The principal contention here made in behalf of the lumber company is that the trial court erred to its prejudice in withdrawing from the consideration of the jury its cross-complaint, claiming $2,500 damages against Anderson & Company. This ruling, we think, was wholly without prejudice to the rights of the lumber company. The jury, in arriving at their conclusion and awarding recovery· against the lumber company, necessarily found that the established and properly chargeable normal rate of premium for the insurance on the plant, as existing at the time of the insurance negotiations, was $8.65 per hundred, and that all of the changes and betterments thereafter made by the lumber company, entitling it to a reduction in the rate,

were such as to only entitle it to a reduction of that rate to $6.04 per hundred. There was abundant evidence supporting this conclusion of the jury.

Manifestly, then, the lumber company received all the benefit it was entitled to by reason of its removal of special hazards. It thus became established that Anderson & Company was not required to furnish the insurance at a less rate than $6.04 per hundred; so, of course, Anderson & Company did not damage the lumber company by its failure to furnish the insurance at a less rate than $6.04 per hundred.

Some further claims of error are made in behalf of the lumber company touching some trial rulings of the court and its instructions to the jury. These we have examined with care and conclude that they are so devoid of substantial support as to not call for discussion in this opinion. They are, for the most part, in effect, disposed of by our disposition of the claim of error made in behalf of the lumber company that the trial court erred in withdrawing from the consideration of the jury its cross-complaint claiming damages.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.